United States Court of Appeals
Fifth Circuit

**F I L E D**

February 28, 2007

Charles R. Fulbruge III

Clerk

REVISED MARCH 7, 2007

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 05-11391
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

OMAR MEJIA-HUERTA, also known as Omar
Huerta-Mejia, also known as Omar Mejia,
also known as Omar Huerta, also known as
Ivan Mexia-Huerta, also known as Omar Mexia,

Defendant-Appellant
_____

Consolidated with
06-10004

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

ANASTACIO PANTOJA-ARELLANO, also known as
Andy Pantoja, also known as Armando
Puentes-Herrera, also known as Pedro
Garcia-Rodriguez,

Defendant-Appellant
_____

Consolidated with
06-10082

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

JOSE ANDRES DEHUMA-SUAREZ,

Defendant-Appellant

_____

Consolidated with
06-10099

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

ANTONIO CRUZ-MARTINEZ,

Defendant-Appellant
_____

Consolidated with
06-10142

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

LUIS ESTRADA,

Defendant-Appellant
_____

Consolidated with
06-10211

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

TABRODRICK DESHAUN CRADDOCK,

Defendant-Appellant


----------------------
Appeals from the
United States District Court
for the Northern District of Texas
----------------------


2

Before JONES, Chief Judge, WIENER, and BARKSDALE, Circuit Judges.

WIENER, Circuit Judge:

This consolidated appeal involves six defendants, each of whom challenges his sentence. All of the sentences were imposed by the same district judge. Defendant-Appellants Omar Mejia-Huerta, Anastacio Pantoja-Arellano, Jose Andres Dehuma-Suarez, and Antonio Cruz-Martinez were convicted of illegal re-entry after deportation, in violation of 8 U.S.C. § 1326. Defendant-Appellant Luis Estrada was convicted of transporting aliens, in violation of 8 U.S.C. § 1324. Defendant-Appellant Tabrodrick Deshaun Craddock was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Of the six, only one —— Estrada —— was sentenced before United States v. Booker,[1] but, post-Booker, his case was remanded for re-sentencing. All the sentences were imposed between early December 2005 and early February 2006.

Although nothing in the government's pre-sentencing submissions or the probation officers' Pre-Sentence Investigation Reports ("PSR") recommended or mentioned any grounds for sentencing departures or variances, the district court in each case —— without providing pre-sentencing notice of its intent to

_____

[1] 543 U.S. 220 (2005).

do so —— imposed a non-Guidelines sentence greater than the Guidelines range indicated. Finding <u>Burns v. United States</u>[2] and the plain language of Federal Rule of Criminal Procedure 32(h) inapplicable to post-<u>Booker</u> sentences at variance with the Guidelines,[3] we conclude that, post-<u>Booker</u>, a sentencing court need not provide pre-sentencing notice of its <u>sua sponte</u> intention to impose a non-Guidelines sentence and affirm the district court in all respects.

## I. FACTS AND PROCEEDINGS

A.   <u>Omar Mejia-Huerta</u>

Mejia-Huerta was indicted for a single count of illegal re-entry after deportation.[4] He pleaded guilty pursuant to a plea agreement. Prior to sentencing, the probation officer prepared a PSR, which calculated Mejia-Huerta's advisory Guidelines range at 9 to 15 months imprisonment.

---

[2] 501 U.S. 129 (1991).

[3]  Rule 32(h) states:

Before the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure.

Fed. R. Crim. Proc. 32(h).

[4] 8 U.S.C. § 1326.

The district court sentenced Mejia-Huerta to a non-Guidelines sentence of 36 months imprisonment followed by three years supervised released. Before imposing the sentence and after considering the sentencing objectives of 18 U.S.C. § 3553(a), the district court stated that Mejia-Huerta's extensive criminal history, disrespect for the laws of the United States, and threat to public safety warranted an "upward variance."[5] Prior to sentencing, neither the district court nor the PSR, or any pre-sentencing submission by the government, indicated the possibility of or reasoning behind the imposition of a non-Guidelines sentence. Mejia-Huerta did not object to the sentence, but timely filed a notice of appeal.

B.  Anastacio Pantoja-Arellano

Pantoja-Arellano was indicted for a single count of illegal re-entry after deportation.[6] He pleaded guilty pursuant to a plea agreement. Prior to sentencing, the probation officer prepared a PSR, which calculated Pantoja-Arellano's advisory Guidelines range at 33 to 41 months imprisonment.

---

[5] Mejia-Huerta had two prior convictions for driving while intoxicated, two prior convictions for improper entry by an illegal alien, a single conviction for interfering with public duties of Emergency Medical Services officials, and arrests for making a false claim of U.S. citizenship, possession and use of an inhalant, driving while intoxicated, evading arrest, and tampering with a government document.

[6] Id.

5

The district court sentenced Pantoja-Arellano to a non-Guidelines sentence of 96 months imprisonment followed by three years supervised released.  Before imposing the sentence and after considering the sentencing objectives of § 3553(a), the district court stated that Pantoja-Arellano's extensive criminal history, disrespect for the laws of the United States, and threat to public safety warranted an "upward variance."[7]  Prior to sentencing, neither the district court nor the PSR, or any pre-sentencing submission by the government, indicated the possibility of or reasoning behind the imposition of a non-Guidelines sentence.

At the conclusion of the sentencing hearing, Pantoja-Arellano's counsel objected to the upward variance and asked the district court if it preferred to consider the objection by oral argument at present or subsequently in writing.  The district court advised Pantoja-Arellano to file a subsequent written objection.

In the post-sentencing written objection, Pantoja-Arellano's counsel complained that the district court erred in failing to

---

[7]  Pantoja-Arellano had three prior convictions for driving while intoxicated, two prior convictions for illegal re-entry, two prior convictions for aiding and abetting transportation of illegal aliens, two prior convictions for assaults causing bodily injury to family members, a single prior drug offense conviction, and additional convictions that were not specifically identified by the district court at sentencing.

give him notice of its intent to make a variance; that the variance did not comply with § 4A1.3 of United States Sentencing Guidelines ("U.S.S.G."); and that the sentence was unreasonable. The district court denied the motion and stated that, even if it were to grant the motion and resentence Pantoja-Arellano, it would impose the same sentence. Pantoja-Arellano timely filed a notice of appeal.

C.    Jose Andres Dehuma-Suarez

Dehuma-Suarez was indicted for a single count of illegal re-entry after deportation, to which he pleaded guilty pursuant to a plea agreement.[8]    Prior to sentencing, the probation officer prepared a PSR, which calculated Dehuma-Suarez's advisory Guidelines range at 21 to 27 months imprisonment.

The district court sentenced Dehuma-Suarez to a non-Guidelines sentence of 120 months imprisonment followed by three years supervised released.    Before imposing the sentence and after considering the sentencing objectives of § 3553(a), the district court stated that Dehuma-Suarez's extensive criminal history, disrespect for the laws of the United States, and threat to public safety warranted an "upward variance."[9]    Prior to

---

[8] Id.

[9] Dehuma-Suarez had four prior convictions for driving while intoxicated and a single conviction for assault on a peace officer, and was arrested and charged with sexual assault of a 14-year-old

7

sentencing, neither the district court nor the PSR, or any pre-sentencing submission by the government, indicated the possibility of or reasoning behind the imposition of a non-Guidelines sentence.

Despite not voicing an objection at the sentencing hearing, Dehuma-Suarez filed a post-sentencing objection to the upward variance later that day, making the same claims as Pantoja-Arellano. In response, the district court denied the motion and stated the same observation that it had made in Pantoja-Arellano's case: it would impose the same sentence, even if Dehuma-Suarez's motion was meritorious. Dehuma-Suarez timely filed a notice of appeal.

D. <u>Antonio Cruz-Martinez</u>

Cruz-Martinez was indicted for a single count of illegal re-entry after deportation, and pleaded guilty pursuant to a plea agreement.[10] Prior to sentencing, the probation officer prepared a PSR, which calculated Cruz-Martinez's advisory Guidelines range at 21 to 27 months imprisonment.

The district court sentenced Cruz-Martinez to a non-Guidelines sentence of 60 months imprisonment followed by three

---

female child. In addition, Dehuma-Suarez had been deported twice and subsequently re-entered the United States both times.

[10] <u>Id.</u>

years supervised released. Before imposing the sentence, the district court stated as it had in the other cases consolidated with this one, that, after considering the sentencing objectives of § 3553(a), Cruz-Martinez's extensive criminal history, disrespect for the laws of the United States, and threat to public safety warranted an "upward variance."[11] Prior to sentencing, neither the district court nor the PSR, or any pre-sentencing submission by the government, indicated the possibility of or reasoning behind the imposition of a non-Guidelines sentence.

At the conclusion of the sentencing hearing, Cruz-Martinez's counsel objected to the upward variance and asked the district court if it preferred to consider the objection by oral argument at present or subsequently in writing. The district court advised Cruz-Martinez to file a subsequent written objection.

In the post-sentencing written objection, Cruz-Martinez's counsel objected to the upward variance for the same reasons espoused by Pantoja-Arellano and Dehuma-Suarez. Making the same observations as it had in those cases, the district court denied

---

[11] Cruz-Martinez had two prior convictions for driving while intoxicated, a single prior conviction for assault causing bodily injury, which was committed on his wife and children, and three prior illegal re-entries into the United States. During one incident of driving while intoxicated, Cruz-Martinez had an unrestrained 7-month-old child in the vehicle with him.

9

the motion and stated that it would impose the same sentence, even if Cruz-Martinez's motion was meritorious. Cruz-Martinez timely filed a notice of appeal.

E.   Luis Estrada

Estrada was indicted for a single count of transporting illegal aliens.[12]  He pleaded guilty pursuant to a plea agreement and was sentenced pre-Booker.  On appeal, we vacated his sentence for Booker error and remanded.[13]

Prior to resentencing, the probation officer prepared a PSR, which calculated Estrada's advisory Guidelines range at 33 to 41 months imprisonment.  The district court lowered Estrada's Guidelines range after sustaining an objection to a two-point enhancement.  As a result, Estrada's Guidelines range was 27 to 33 months imprisonment.  The district court nevertheless resentenced Estrada to a non-Guidelines sentence of 41 months imprisonment followed by three years supervised release.  Before imposing the sentence and after considering the sentencing objectives of § 3553(a), the district court stated that Estrada's disrespect for the laws of the United States and threat to public

---

[12] Id. § 1324(a)(1)(A)(ii).

[13] United States v. Estrada, 153 F.App'x 265, 266-67 (5th Cir. 2005).

safety warranted an "upward variance."[14] Prior to sentencing, neither the district court nor the PSR, or any pre-sentencing submission by the government, indicated the possibility of or reasoning behind the imposition of a non-Guidelines sentence. Estrada did not object to the sentence, but did timely file a notice of appeal.

F.   Tabrodrick Deshaun Craddock

Craddock was indicted for a single count of being a felon in possession of a firearm.[15] He pleaded guilty pursuant to a plea agreement.  Prior to sentencing, the probation officer prepared a PSR, which calculated Craddock's advisory Guidelines range at 21 to 27 months imprisonment.

The district court sentenced Craddock to a non-Guidelines sentence of 60 months imprisonment followed by three years supervised released.  Before imposing the sentence and after considering the sentencing objectives of § 3553(a), the district court stated that Craddock's history of violent criminal behavior, his threat to public safety, the need to provide adequate punishment, and the need to promote respect for the law

---

[14] Estrada was transporting 17 illegal aliens in his vehicle and his co-defendant was transporting 10 additional illegal aliens in his vehicle.  The district court concluded that these facts alone justified the upward variance.

[15] 18 U.S.C. § 922(g)(1).

warranted an "upward variance."[16]  Prior to sentencing, neither the district court nor the PSR, or any pre-sentencing submission by the government indicated the possibility of or reasoning behind the imposition of a non-Guidelines sentence.  Craddock did not object to the sentence, but did timely file a notice of appeal.

## II. <u>LAW AND ANALYSIS</u>

On appeal, all six defendants assert two identical arguments: (1) The district court erred when it failed to provide pre-sentencing notice of its <u>sua sponte</u> intention to impose a non-Guidelines sentence, thereby violating <u>Burns</u> and Rule 32(h); and (2) the district court erred when it failed to follow the sentencing methodology set forth in U.S.S.G. § 4A1.3.  In addition, Mejia-Huerta, Pantoja-Arellano, Dehuma-Suarez, and Cruz-Martinez contend that the district court erroneously treated each of their prior aggravated felony convictions as sentence-

---

[16] Craddock had prior convictions for assault in which he assaulted his mother and two younger siblings (ages twelve and thirteen, respectively), evading arrest, and unauthorized use of a motor vehicle, in which he led law enforcement officers on a chase throughout Lubbock, Texas and was only apprehended after crashing the vehicle into a utility pole.  Furthermore, during the occasion of one of Craddock's arrests, law enforcement officers entered the residence where Craddock was located and observed Craddock brandishing a pistol.  Craddock charged the officers, engaging in a fight with one of them.  Craddock continued to fight with this officer until subdued by a taser.  In addition, an analysis of spent rounds from the pistol in Craddock's possession indicated that it had been used one week earlier in a home-invasion robbery.

12

enhancing factors, rather than as substantive elements pursuant to 8 U.S.C. § 1326(b).

The government agrees with the defendants that the district court was required by the rationale of <u>Burns</u> and Rule 32(h) to provide pre-sentencing notice of its <u>sua sponte</u> intention to impose a non-Guidelines sentence. The government contends that this notice will insure a more focused and adversarial proceeding, and will avoid any due process implications.

Notwithstanding its position, the government asserts that the district court's failure to provide pre-sentencing notice of its <u>sua sponte</u> intention to impose a non-Guidelines sentence does not constitute reversible error. As to Pantoja-Arellano, Dehuma-Suarez, and Cruz-Martinez, the government asserts that our review is for harmless error and, because the district court explicitly acknowledged that, even if it had provided pre-sentencing notice of its <u>sua sponte</u> intention to impose a non-Guidelines sentence, it would have imposed the same sentence, any error was harmless. As to Mejia-Huerta, Estrada, and Craddock, the government contends that review is for plain error and, because there is no binding, pre-existing law on this issue, any error was not plain.

A.   <u>Standard of Review</u>

Having timely objected, Pantoja-Arellano's, Dehuma-

Suarez's,[17] and Cruz-Martinez's claims are reviewed for harmless error.[18] Under harmless error review, "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."[19] An error affects substantial rights if it affects the outcome of the trial proceedings; conversely, an error is harmless if it does not affect the outcome of the district court proceedings.[20] A sentencing error will be considered harmless if the government can establish beyond a reasonable doubt that the district court would have imposed the same sentence absent the error.[21]

In contrast, we review the claims of Mejia-Huerta, Estrada, and Craddock for plain error, as they failed timely to object to the district court.[22] Under plain error review, we may exercise

_____

[17] It is questionable whether Dehuma-Suarez timely raised an objection to his sentence, thus implicating the standard of review we apply to his claim. Dehuma-Suarez failed to raise a contemporaneous objection during his sentencing hearing, but filed a written objection later that same day. His actions may not have been sufficient to constitute a timely objection, but because his claim fails under both harmless error and plain error review, we need not reach this issue. Instead, we will review Dehuma-Suarez's claim under the more lenient harmless error standard.

[18] United States v. Walters, 418 F.3d 461, 463 (5th Cir. 2005).

[19] Fed. R. Crim. Proc. 52(a).

[20] United States v. Akpan, 407 F.3d 360, 377 (5th Cir. 2005).

[21] United States v. Pineiro, 410 F.3d 282, 286 (5th Cir. 2005).

[22] United States v. Vargas-Garcia, 434 F.3d 345, 347 (5th Cir. 2005), cert. denied, 126 S. Ct. 1894 (2006). Estrada contends that

14

our discretion to correct a defendant's sentence if there is: (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings.[23]

B. <u>Merits</u>

i. <u>Rule 32(h) and</u> Burns

Rule 32(h) was a legislative response to the Supreme Court's decision in <u>Burns</u>. There, the Supreme Court held that an earlier version of Rule 32 required a sentencing court to give parties reasonable notice of its intention to depart upwardly <u>sua sponte</u> from the appropriate Guidelines range, if the grounds for such a departure were not identified in either the PSR or a pre-sentencing submission by the government.[24] The Court concluded that, to give effect to a defendant's right "to comment upon the

---

his claim should be reviewed for harmless error as he properly objected to the imposition of his sentence. We disagree. At the conclusion of Estrada's sentencing, Estrada's counsel stated, "[W]ith the Court's permission, I'll file a written objection on the notice requirement." Nothing more was said concerning the district court's alleged error. In response, the district court approved Estrada's proposed procedure. Estrada, however, failed to file his proposed written objection. Estrada's counsel's single statement was simply insufficient to preserve Estrada's objection. It did not adequately provide the district court with the substance of the objection or an opportunity to cure the perceived error. Thus, Estrada's claim is reviewed for plain error.

[23] <u>United States v. Lewis</u>, 412 F.3d 614, 616 (5th Cir. 2005).

[24] 501 U.S. at 138-39.

15

probation officer's determination and on other matters relating to the appropriate sentence," advance notice was a prerequisite to a <u>departure</u>.[25] Otherwise, reasoned the Court, a litigant would unfairly have (1) to engage in an incoherent comment and defense at sentencing; (2) in a pre-sentencing filing, to waste large amounts of time guessing when or on what grounds a court might depart <u>sua sponte</u>; or (3) to suggest reluctantly a departure possibility to the sentencing court in a pre-sentencing filing, only for the purpose of rebutting the possible departure grounds.[26] Rule 32(h) has essentially codified the holding of <u>Burns</u>.

Before <u>United States v. Booker</u>, sentencing courts were compelled to impose sentences that fell within the sentencing ranges assigned by the Guidelines, unless a specified exception existed.[27] When a sentencing court found such an exception and exercised its limited discretion to sentence outside the applicable Guidelines range, the court was said to be engaging in

---

[25] <u>Id.</u> This right was codified in Rule 32(a)(1) at the time of <u>Burns</u>, but is now codified in Rule 32(i)(1).

[26] <u>Id.</u> at 136-37. The Court also expressed concern with whether a lack of notice under Rule 32 would violate the Due Process Clause. <u>Id.</u> at 138.

[27] 543 U.S. at 259.

16

a "departure" from the Guidelines.[28]  Thus, pre-<u>Booker</u>, a sentencing court would either impose a sentence within the properly calculated Guidelines range or impose a Guidelines sentence that included an upward or downward departure.

Since <u>Booker</u>, sentencing courts have had a third sentencing option —— a non-Guidelines sentence.[29]  Under the post-<u>Booker</u> advisory Guidelines regime, a sentencing court may impose a sentence either higher or lower than —— at variance with —— the appropriate Guidelines range.[30]  Before doing so, however, the sentencing court must calculate the correct Guidelines range, consider it as advisory, and use it as a frame of reference.[31] If the sentencing court chooses to impose a non-Guidelines sentence, its reasons for doing so must be consistent with the factors enumerated in § 3553(a).[32]  Thus, post-<u>Booker</u>, a

---

[28] <u>United States v. Smith</u>, 440 F.3d 704, 707 (5th Cir. 2006).

[29] <u>United States v. Mares</u>, 402 F.3d 511, 519 n.7 (5th Cir. 2005), <u>cert. denied</u>, 126 S. Ct. 43 (2005).

[30] <u>Smith</u>, 440 F.3d at 707.

[31] <u>United States v. Angeles-Mendoza</u>, 407 F.3d 742, 746 (5th Cir. 2005).

[32] <u>Smith</u>, 440 F.3d at 707.  Section 3553(a)'s factors include: the defendant's offense conduct, personal history, and characteristics; the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence to criminal conduct, to protect the public, and to rehabilitate the defendant; the kinds of sentences available; the advisory Guidelines range and

17

sentencing court may impose a non-Guidelines sentence, i.e., a "variance", but not a "departure," if it calculates the proper sentencing range and references the broad array of factors set forth in § 3553(a).

Since Booker, an incongruent pattern of caselaw has developed among those federal circuits that have considered whether Burns or Rule 32(h) continue to apply to non-Guidelines sentences. The Third,[33] Seventh,[34] Eighth,[35] and Elevnth[36] Circuits have answered in the negative; the Second,[37] Fourth,[38] Ninth,[39] and Tenth[40] Circuits have answered in the affirmative. In an

---

policy statements; the need to avoid unwarranted sentencing disparities; and the need to provide restitution.

[33] United States v. Vampire Nation, 451 F.3d 189, 195-98 (3d Cir. 2006), cert. denied, 127 S. Ct. 424 (2006).

[34] United States v. Walker, 447 F.3d 999, 1005-07 (7th Cir. 2006), cert. denied 127 S. Ct. 314 (2006).

[35] United States v. Egenberger, 424 F.3d 803, 805-06 (8th Cir. 2005), cert. denied 126 S. Ct. 1106 (2006).

[36] United States v. Irizarry, 458 F.3d 1208, 1212 (11th Cir. 2006).

[37] United States v. Anati, 457 F.3d 233, 236-38 (2d Cir. 2006).

[38] United States v. Davenport, 445 F.3d 366, 371 (4th Cir. 2006).

[39] United States v. Evans-Martinez, 448 F.3d 1163, 1167 (9th Cir. 2006).

[40] United States v. Dozier, 444 F.3d 1215, 1217-18 (10th Cir. 2006).

18

unpublished and thus non-binding opinion, we have previously determined that a sentencing court's failure to provide notice of its intention to impose a non-Guidelines sentence post-<u>Booker</u> does not constitute plain error, but we have expressly declined to rule on whether such failure constitutes error.[41] We now enter the fray, agreeing with the circuits that have concluded that neither <u>Burns</u> nor Rule 32(h) apply to non-Guidelines sentences and thereby disrupt the equipoise of the circuit split on this issue.

We first note that the plain language of Rule 32(h) limits its application to <u>departures</u>. It contains no language even hinting that it might apply elsewhere. We conclude that we are bound to hold that Rule 32(h) applies to <u>departures</u> only and not to <u>variances</u> from the Guidelines.

In addition, as <u>Booker</u> has rendered the Guidelines purely advisory, the concerns that precipitated the Court's decision in <u>Burns</u> are no longer viable. Sentencing post-<u>Booker</u> is a heavily discretionary exercise. Sentencing courts need only consider the Guidelines as informative and must consult the full host of factors set forth in § 3553(a) before rendering a reasonable non-

---

[41] <u>United States v. Dean</u>, No. 05-51015, 2006 WL 3005546, at *2 (5th Cir. Oct. 23, 2006); <u>cf.</u> <u>United States v. Mateo</u>, 179 F.App'x 64, 65 (1st Cir. 2006); <u>United States v. Pettus</u>, 166 F. App'x 532, 534 (2d Cir. 2006); <u>United States v. Simmerer</u>, 156 F.App'x 124, 128 (11th Cir. 2005), <u>cert. denied</u> 126 S. Ct. 1599 (2006).

19

Guidelines sentence. These factors are known (or knowable) by the parties prior to sentencing, thus putting the litigants on notice that a sentencing court has discretion to consider any of these factors. This knowledge eliminates the element of unfair surprise, the concern that defense counsel will waste time with a pre-sentencing filing, the possibility that defense counsel will unwittingly provide the sentencing court with a grounds for departure, and the worry of possibly undermining the adversarial process, that permeate Burns, thus negating its application to non-Guidelines sentences.

Here, each defendant had knowledge of the facts of his case on which the district court would rely in applying the § 3553(a) factors. The district court correctly calculated the sentencing ranges and, after considering the § 3553(a) factors, exercised its discretion to impose non-Guidelines sentences. This is not an instance when the sentencing court unexpectedly departed from a binding Guidelines range. Rather, the district court predictably did what any district court is empowered to do post-Booker. If we were to conclude that the advance notice requirement of Rule 32(h) applies to non-Guidelines sentences, we would re-elevate the Guidelines to a position it no longer enjoys.[42] Thus, we conclude that sentencing courts are not

---

[42] See Vampire Nation, 451 F.3d at 196.

required to give pre-sentencing notice of their <u>sua sponte</u> intention to impose a non-Guidelines sentence, regardless of the pre-<u>Booker</u> pronouncements of <u>Burns</u> and Rule 32(h).

 ii. <u>U.S.S.G. § 4A1.3</u>

Pursuant to U.S.S.G. § 4A1.3(a)(1), a sentencing court may impose an upward <u>departure</u> "[i]f reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." In the event that the sentencing court decides to depart, it is to follow the method for calculating the extent of the departure set forth in §§ 4A1.3(a)(4)(A) and (B).

Here, the defendants argue that their sentences were unreasonable because the district court failed to comply with or consult the methodology established in § 4A1.3.[43] As each sentence was a variance and not a departure, we disagree.

We note initially that the district court's decisions to impose non-Guidelines sentences were not based exclusively on unrepresentative criminal histories. Rather, they were based on a number of § 3553(a) factors, including extensive criminal

---

[43] On appeal, the Defendant-Appellants did not assert that their respective sentences were unreasonable in and of themselves, but instead only challenged the reasonableness of the sentences based on the district court's failure to consult and comply with § 4A1.3.

history, the need to promote respect for law, deterrence of future criminal conduct, and the need to protect the public. We reiterate for emphasis that § 4A1.3 applies only to <u>departures</u> —— based on unrepresentative criminal history —— not to <u>variances</u>. Thus, from the outset, the defendants' argument fails.

Furthermore, the defendants completely skirt our test for determining the reasonableness of a non-Guidelines sentence. We have established that a non-Guidelines sentence is unreasonable when it (1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors.[44] Here, the defendants do not argue that the district court short-changed a particular factor, over-emphasized another, or erred in balancing multiple factors. Instead, the defendants disregard our caselaw and rely on a single, inapposite Seventh Circuit case to argue that the sentencer's failure to conduct the calculus of § 4A1.3 renders a non-Guidelines sentence <u>per se</u> unreasonable.[45]

In simplest terms, the district court in the six cases consolidated here on appeal (1) calculated the proper Guidelines

---

[44] <u>Smith</u>, 440 F.3d at 708.

[45] <u>United States v. Castro-Juarez</u>, 425 F.3d 430 (7th Cir. 2005).

22

ranges, (2) considered multiple § 3553(a) factors, (3) explained its reasons for imposing non-Guidelines sentences, and (4) imposed non-Guidelines sentences that we conclude are not unreasonable. We hold that the district court committed no error in calculating and imposing the defendants' sentences. Therefore, defendants' no-pre-sentencing-notice claim fails under either of the applicable standards of review.

iii. 8 U.S.C. § 1326(b)

Finally, four of the six defendants contend that the district court inappropriately treated their prior aggravated felony convictions as sentence enhancements, rather than as an element of their offenses under 8 U.S.C. § 1326(b). As this argument is foreclosed by Almendarez-Torres v. United States,[46] it fails.

### III. CONCLUSION

In the post-Booker world of advisory Guidelines, all parties are on notice that, after considering the sentencing factors of § 3553(a), a sentencing court has the discretion to impose a non-Guidelines sentence. Stated differently, parties are conclusively presumed to have pre-sentencing knowledge of these factors. Thus, no party is unfairly prejudiced by the imposition

---

[46] 523 U.S. 224, 235 (1998); see United States v. Alvarado-Hernandez, 465 F.3d 188, 190 n.2 (5th Cir. 2006).

23

of a non-Guidelines sentence based on a sentencing court's <u>sua sponte</u> consideration and application of § 3553(a). Accordingly, the unfair surprise and other concerns sought to be remedied by <u>Burns</u> and Rule 32(h) is no longer a legitimate concern and no longer necessitates that a sentencing court provide pre-sentencing notice of its intention to impose a non-Guidelines sentence <u>sua sponte</u>.

Based on the applicable law and our extensive review of the parties' briefs and the records of the cases consolidated in this appeal, we hold that (1) the district court was not required to provide pre-sentencing notice of its <u>sua sponte</u> intention to impose a non-Guidelines sentence; (2) the district court's failure to follow the methodology of U.S.S.G. § 4A1.3 did not constitute error; and (3) the defendants' § 1326(b) claims are non-meritorious. We therefore affirm the sentence imposed by the district court in each of these six consolidated cases.

AFFIRMED